**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TERENCE THOMPSON,                         :
                                          :        Civil Action No. 11-7164 (RMB)
                  Petitioner,             :
                                          :
            v.                            :        **OPINION**
                                          :
CHARLES WARREN, et al.,                   :
                                          :
                  Respondents.            :


**APPEARANCES:**

Petitioner pro se
Terence Thompson
New Jersey State Prison
Trenton, NJ 08625

**BUMB**, District Judge

     Petitioner Terence Thompson, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Charles Warren and the Attorney General of New Jersey.

     This matter is presently before the Court pursuant to Petitioner's submission of a Motion [3] to stay this matter in order to allow him to exhaust certain claims in state court.  For the reasons stated herein, the Motion will be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the

Superior Court of New Jersey, Appellate Division.[1]

> In the early morning hours of July 31, 1996, the
> Camden Police Department received a report of shots
> fired at the Pleasant Gardens Apartments.  Several
> officers responded to the scene where the body of
> Michael Lamb was found.  At least three shell casings
> were found at that time, and two additional casings
> were found in the daylight hours.  No firearms were
> recovered from the scene.  Bullets and bullet fragments
> were subsequently recovered from the victim's body
> during the autopsy.  The autopsy revealed that Lamb
> suffered thirteen fatal wounds from seven bullets that
> injured his right lung, liver, right adrenal gland,
> spinal cord, brain, intestines, and pelvis.
>
> Lamb was a drug dealer who had arranged to
> purchase drugs from Juan Collado for $15,000 in cash.
> Collado was staying with his friend, Richard Almanzar,
> in the Pleasant Gardens Apartments.  Collado had
> traveled to Camden from New York about three weeks
> earlier to sell drugs with Almanzar's assistance.
> Collado and Almanzar had been introduced to another man
> involved in the drug trade, Ronnie Leary, and had also
> been introduced to Lamb for the purpose of selling a
> large quantity of drugs to him.
>
> Although Collado had not previously sold drugs to
> Lamb, he arranged to do so on the night of July 30,
> 1996.  Early in the evening, Collado and Almanzar met
> Leary and defendant at a pizzeria because Collado
> wanted to learn more about Lamb.  While Collado was
> speaking with Leary, Lamb paged Collado about

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

purchasing one and one-half kilos of cocaine.  Leary told Collado that Lamb would likely purchase drugs from him once or twice and then rob him or have him killed. Collado asked Leary what he should do, Leary told him to set up the deal, and he agreed to do it.

The four men then planned to rob Lamb rather than sell drugs to him.  The actual plan was for Collado and Almanzar to meet Lamb, who would be told to be alone and bring the money.  They would check the money and have Lamb follow them in his car to the Pleasant Gardens Apartments.  There, Leary and defendant were to be hiding so that Collado could lead Lamb into an ambush, and Leary and defendant could rob him.  Collado and Almanzar arranged to meet Lamb later that night. When they met, Lamb followed Collado and Almanzar to the Pleasant Gardens Apartments.

Upon arriving there, Collado and Lamb exited their vehicles and walked down a sidewalk where Leary and defendant were waiting in the bushes.  Defendant emerged behind Collado and Lamb, planning to grab the money.  However, Collado and Lamb turned around and saw defendant coming at them.  Lamb pulled out his gun and shot defendant.  Defendant and Lamb began wrestling, and Leary and defendant began shooting Lamb, which both Collado and Almanzar saw.  Collado grabbed the money and ran to his car, where Almanzar was waiting.  Leary and defendant then got into Leary's minivan, and both vehicles drove away.

The two vehicles met just outside the apartment complex.  Realizing defendant had been shot, Leary said that he would take defendant to the hospital.  He would then contact Collado and Almanzar to meet, count the money, and distribute each person's share.  Upon returning to the Pleasant Gardens Apartments, Collado and Almanzar were questioned by the police and taken to the police station for further questioning.  The Camden police arrested Leary on August 7, 1996, after he admitted his involvement in Lamb's murder.  Collado and Almanzar were also arrested for their involvement in the homicide.

On October 23, 1996, two investigators from the Camden County Prosecutor's Office visited defendant in the hospital.  The investigators again spoke with defendant on October 25, 1996, after he was discharged.

3

> Defendant informed them that he was not fully truthful
> when he spoke with them on October 23, 1996, and he
> then confessed to the crimes.

State v. Thompson, Ind. No. 97-06-1623, 2011 WL 499394, *1-2

(N.J. Super. App.Div. Feb. 15, 2011).

B.    Procedural History

Following a jury trial, Petitioner was convicted of robbery,

felony murder, and related offenses.  On April 28, 2000,

Petitioner was sentenced to an aggregate sentence of life in

prison without parole.  On direct appeal, Petitioner raised the

following claims, unsuccessfully:

> POINT I - THE TRIAL COURT ERRED IN FAILING TO HOLD A
> HEARING TO DETERMINE WHETHER THE DEFENDANT'S PHYSICAL
> CONDITION PRECLUDED HIS COMPETENCY TO STAND TRIAL.
>
> POINT II - THE DEFENDANT'S PHYSICAL CONDITION RENDERED
> HIM INCOMPETENT TO GIVE VOLUNTARY STATEMENTS.
> (PARTIALLY RAISED BELOW[.])
>
> POINT III - THE TRIAL COURT ERRED BY IMPOSING AN
> EXCESSIVE SENTENCE.
>
>> A.   THE TRIAL COURT ERRED IN FAILING TO MERGE THE
>> DEFENDANT'S CONVICTIONS FOR ROB[B]ERY AND
>> POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE
>> INTO HIS CONVICTION FOR FELONY MURDER.
>>
>> B.   THE TRIAL COURT ERRED IN RUNNING THE
>> DEFENDANT'S SENTENCE FOR POSSESSION OF A WEAPON
>> WITHOUT A PERMIT CONSECUTIVELY WITH HIS OTHER
>> CONVICTIONS.

State v. Thompson, 2011 WL 499394, *3.  The Superior Court of New

Jersey, Appellate Division, affirmed Petitioner's convictions but

remanded for a sentencing modification.  The Supreme Court of New

Jersey denied certification, State v. Thompson, 179 N.J. 373

4

(2004), and the Supreme Court of the United States denied

certiorari, Thompson v. New Jersey, 543 U.S. 888 (Oct. 4, 2004).

On October 13, 2004, Petitioner filed a pro se verified

petition for post-conviction relief in state court, which was

later supported by a memorandum of law filed by counsel.  In the

trial court, Petitioner raised the following PCR issues:

POINT ONE - COUNSEL['S] PERFORMANCE WAS DEFICIENT AND
PETITION WAS PREJUDICED BY COUNSEL'S PERFORMANCE.

A.  COUNSEL['S] FAILURE TO CALL CO-DEFENDANT LEARY
AS A WITNESS WAS PREJUDICIAL IN THAT DEFENDANT WAS
DENIED A VIABLE DEFENSE TO CREATE REASONABLE
DOUBT.

B.  COUNSEL FAILED TO INTERPOSE A TIMELY
OBJECTION[] TO ACCOMPLICES JUAN COLLADO AND
RICHARD ALMANZAR TESTIFYING FOR THE STATE WEARING
HANDCUFFS AND PRISON GARBS [sic] AND AS SUCH
DEFENDANT IS RESPECTFULLY REQUESTING AN
EVIDENTIARY HEARING TO FURTHER DEVELOP THE RECORD.

C.  COUNSEL FAILED TO REQUEST ADEQUATE JURY
INSTRUCTIONS ON ACCOMPLICE LIABILITY.

D.  COUNSEL['S] FAILURE TO REQUEST JURY
INSTRUCTIONS ON IMPERFECT SELF-DEFENSE LED TO A
COMPROMISE VERDICT.

State v. Thompson, 2011 WL 499394, *3.

The trial court denied relief.  On appeal from the denial of

post-conviction relief, Petitioner raised the following issues:

POINT ONE - THE ORDER DENYING POST-CONVICTION RELIEF
SHOULD BE REVERSED BECAUSE THE DEFENDANT WAS DENIED HIS
RIGHT TO A FAIRLY CONDUCTED POST-CONVICTION RELIEF
HEARING (NOT RAISED BELOW).

(A) THE COURT ABUSED ITS DISCRETION IN RULING THAT
THE DEFENDANT DID NOT HAVE THE RIGHT TO BE PRESENT

AT A NON-EVIDENTIARY POST-CONVICTION RELIEF
HEARING.

(B) THE DEFENDANT WAS DENIED THE "OPPORTUNITY TO
SPEAK ON HIS OWN BEHALF" IN POST-CONVICTION
RELIEF.

POINT TWO - THE COURT ABUSED ITS DISCRETION BY APPLYING
THE 4. 3:22-4 PROCEDURAL BAR IN DENYING POST-CONVICTION
RELIEF BECAUSE THE DEFENDANT'S FOURTEENTH AMENDMENT DUE
PROCESS RIGHT TO A FAIR TRIAL WAS VIOLATED.

POINT THREE - THE COURT ERRED IN DENYING POST-
CONVICTION RELIEF WITHOUT CONDUCTING A FULL EVIDENTIARY
HEARING BECAUSE TRIAL COUNSEL'S FAILURE TO OBJECT TO
STATE'S WITNESSES TESTIFYING IN PRISON GARB AND
SHACKLED; TRIAL COUNSEL'S FAILURE TO CALL CO-DEFENDANT
LEARY AS A DEFENSE WITNESS; TRIAL COUNSEL'S FAILURE TO
OBJECT TO THE TRIAL COURT'S JURY INSTRUCTIONS ON
ACCOMPLICE LIABILITY OR TO REQUEST A JURY INSTRUCTION
ON IMPERFECT SELF-DEFENSE; AND TRIAL COUNSEL'S FAILURE
TO OBJECT TO THE PROSECUTOR'S SUMMATION SATISFIED BOTH
PRONGS OF THE *STRICKLAND/FRITZ* TEST FOR INEFFECTIVE
ASSISTANCE OF COUNSEL, AND APPELLATE COUNSEL WAS
INEFFECTIVE FOR FAILURE TO RAISE THE ISSUE OF
INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL ON APPEAL.

POINT FOUR - THE COURT'S FULING DENYING POST-CONVICTION
RELIEF VIOLATED THE DEFENDANT'S RIGHT TO CONFRONTATION
AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED
STATES CONSTITUTION AND ARTICLE I, PARAGRAPHS 9 AND 10
OF THE NEW JERSEY CONSTITUTION.

POINT FIVE - DEFENDANT REASSERTS ALL OTHER ISSUES
RAISED IN DEFENDANT'S *PRO SE* SUBMISSIONS IN SUPPORT OF
POST-CONVICTION RELIEF.

State v. Thompson, 2011 WL 499394, *3-4.  The Appellate Division

affirmed the denial of relief, State v. Thompson, 2011 WL 499394

(N.J. Super. App.Div. Feb. 15, 2011), and the Supreme Court of

New Jersey denied certification, 207 N.J. 35 (June 16, 2011).

This Petition followed.  Here, Petitioner asserts the

following grounds for relief:

A. <u>GROUND ONE</u>:
THE STATE COURT'S RULING THAT THE TRIAL COURT DID NOT
ERR IN FAILING TO HOLD A HEARING TO DETERMINE WHETHER
THE PETITIONER'S PHYSICAL CONDITION PRECLUDED HIS
COMPETENCY TO STAND TRIAL WAS CONTRARY TO CLEARLY
ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION
OF FEDERAL LAW, THEREFORE, THE WRIT SHOULD ISSUE.  ...

B. <u>GROUND TWO</u>:
THE STATE COURT'S RULING THAT THE PETITIONER'S PHYSICAL
CONDITION DID NOT RENDER HIM INCOMPETENT TO GIVE
VOLUNTARY STATEMENTS WAS CONTRARY TO CLEARLY
ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION
OF FEDERAL LAW, THEREFORE, THE WRIT SHOULD ISSUE.  ...

C. <u>GROUND THREE</u>:
THE STATE COURT'S RULING THAT PETITIONER WAS NOT
SUBJECTED TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY
COUNSEL'S FAILURE TO CALL CO-DEFENDANT LEARY AS A [sic]
WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN
UNREASONABLE APPLICATION OF FEDERAL LAW, THEREFORE, THE
WRIT SHOULD ISSUE.  ...

D. <u>GROUND FOUR</u>:
THE STATE COURT'S RULING THAT PETITIONER WAS NOT
SUBJECTED TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY
COUNSEL'S FAILURE TO OBJECT TO ACCOMPLICES JUAN COLLADO
AND RICHARD ALMANZAR TESTIFYING FOR THE STATE WEARING
HANDCUFFS AND PRISON GARBS WAS CONTRARY TO CLEARLY
ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION
OF FEDERAL LAW, THEREFORE, THE WRIT SHOULD ISSUE.  ...

E. <u>GROUND FIVE</u>:
THE STATE COURT'S RULING THAT PETITIONER WAS NOT
SUBJECTED TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY
COUNSEL'S FAILURE TO REQUEST ADEQUATE JURY INSTRUCTIONS
ON ACCOMPLICE LIABILITY WAS CONTRARY TO CLEARLY
ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION
OF FEDERAL LAW, THEREFORE, THE WRIT SHOULD ISSUE.  ...

F. <u>GROUND SIX</u>:
THE STATE COURT'S RULING THAT PETITIONER WAS NOT
SUBJECTED TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY
COUNSEL'S FAILURE TO REQUEST A JURY INSTRUCTION ON
IMPERFECT SELF-DEFENSE LED TO A COMPROMISED VERDICT WAS
CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN
UNREASONABLE APPLICATION OF FEDERAL LAW, THEREFORE, THE
WRIT SHOULD ISSUE.  ...

(Petition, Addendum Two.)

In response to this Court's Notice and Order [2] advising Petitioner of his rights under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), Petitioner filed a Motion [3] to Stay this action in order that he can exhaust certain claims in state court.  The Motion reads, in its entirety:

> PLEASE TAKE NOTICE that the undersigned petitioner shall make application before the District Court of New Jersey, for an order permitting the petitioner to return to State court to exhaust a Motion for a New Trial Based on Newly Discovered Evidence; a Petition to Correct an Illegal Sentence; and a Petition for Post-Conviction Relief, to exhaust claims that are new, were not raised, and never adjudicated.

Petitioner has not supported the Motion with any further explanations, affidavits, or briefs.

## II.   28 U.S.C. § 2254

As Title 28, United States Code Section 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>     (A) the applicant has exhausted the remedies available in the courts of the State; or

8

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

...

28 U.S.C. § 2254.

The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d),[2] which provides in pertinent part:

(1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed,

---

[2] The limitations period is applied on a claim-by-claim basis.  See Fielder v. Verner, 379 F.3d 113 (3d Cir. 2004), cert. denied, 543 U.S. 1067 (2005); Sweger v. Chesney, 294 F.3d 506 (3d Cir. 2002).

if the applicant was prevented from filing by such
State action;

(c) the date on which the constitutional right
asserted was initially recognized by the Supreme Court,
if the right has been newly recognized by the Supreme
Court and made retroactively applicable to cases on
collateral review; or

(d) the date on which the factual predicate of the
claim or claims presented could have been discovered
through the exercise of due diligence.

(2) The time during which a properly filed application
for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is
pending shall not be counted toward any period of
limitation under this section.

As noted above, a state prisoner applying for a writ of

habeas corpus in federal court must first "exhaust[] the remedies

available in the courts of the State," unless "there is an

absence of available State corrective process[] or ...

circumstances exist that render such process ineffective ... ."[3]

28 U.S.C. § 2254(b)(1).  See also Rose v. Lundy, 455 U.S. 509,

515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir.

1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme

Court precedent and the AEDPA mandate that prior to determining

the merits of [a] petition, [a court] must consider whether

---

[3] Exhaustion of state remedies has been required for more
than a century, since the Supreme Court's decision in Ex parte
Royall, 117 U.S. 241 (1886).  The exhaustion doctrine was first
codified at 28 U.S.C. § 2254 in 1948, see Rose v. Lundy, 455 U.S.
509, 516-18 (1982).

[petitioner] is required to present [his or her] unexhausted

claims to the [state's] courts").

A petitioner exhausts state remedies by presenting his

federal constitutional claims to each level of the state courts

empowered to hear those claims, either on direct appeal or in

collateral post-conviction proceedings.  See, e.g., O'Sullivan v.

Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners

[in order to fully exhaust their claims] to file petitions for

discretionary review when that review is part of the ordinary

appellate review procedure in the State"); Lambert v. Blackwell,

134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state

court is not required if the petitioner's claim has been

considered on direct appeal); 28 U.S.C. § 2254(c) ("An applicant

shall not be deemed to have exhausted the remedies available in

the courts of the State, within the meaning of this section, if

he has the right under the law of the State to raise, by any

available procedure, the question presented.")  Once a

petitioner's federal claims have been fairly presented to the

state's highest court, the exhaustion requirement is satisfied.

Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor,

404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts

establishing exhaustion.  Toulson v. Beyer, 987 F.2d 984, 987 (3d

Cir. 1993).  This means that the claims heard by the state courts

must be the "substantial equivalent" of the claims asserted in

the federal habeas petition.  Picard, 404 U.S. at 275.  Reliance

on the same constitutional provision is not sufficient; the legal

theory and factual basis must also be the same.  Id. at 277.

Generally, district courts should dismiss petitions

containing unexhausted claims in the absence of a state court

decision clearly precluding further relief, even if it is not

likely that a state court will consider the claims on the merits.

Rose v. Lundy, 455 U.S. at 522; Banks v. Horn, 126 F.3d 206, 212-

14 (3d Cir. 1997); see also Toulson, 987 F.2d at 989 ("Because no

[New Jersey] court has concluded that petitioner is procedurally

barred from raising his unexhausted claims and state law does not

clearly require a finding of default, we hold that the district

court should have dismissed the petition without prejudice for

failure to exhaust state remedies").  But see Christy v. Horn,

115 F.3d 201, 206-07 (3d Cir. 1997) ("in rare cases exceptional

circumstances of peculiar urgency may exist which permit a

federal court to entertain an unexhausted claim").  Because the

one-year statute of limitations is not statutorily tolled by the

premature filing of a federal habeas petition, see Duncan v.

Walker, 533 U.S. 167 (2001), federal courts sometimes may stay

§ 2254 habeas proceedings to permit prisoners to exhaust state

claims.  Petitioner has requested such a stay.

### III.  ANALYSIS

Petitioner has asked this Court for a stay of these proceedings so that he can exhaust, in state court, vague new claims, never previously raised or adjudicated.

As noted above, the exhaustion requirement is a "total exhaustion" rule; that is, all claims presented in the federal habeas petition must have been exhausted in state court.  Rose v. Lundy, 455 U.S. 509 (1982).  At the time Lundy was decided, there was no statute of limitations on the filing of federal habeas petitions.  The enactment in 1996 of a one-year limitations period for § 2254 habeas petitions,[4] however, "'has altered the context in which the choice of mechanisms for handling mixed petitions is to be made.'"  Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004) (quoting Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir.), cert. denied, 534 U.S. 1015 (2001)).  Because of the one-year limitations period, dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court.  "Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition." Crews, 360 F.3d at 151.  Indeed, the Court of Appeals for the Third Circuit has held that "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action."  Crews, 360 F.3d at 154.

---

[4] See 28 U.S.C. § 2244(d).

The Supreme Court has somewhat limited the stay-and-abeyance rule announced in Crews.

> [S]tay and abeyance should be available only in limited circumstances.  Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
>
> ...
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.  In such circumstances, the district court should stay, rather than dismiss, the mixed petition.  ...  For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

Rhines v. Weber, 544 U.S. 269, 277-78 (2005) (citations omitted).

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the one-year statute of limitations.  "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back."  Id. at 278.  See also Crews, 360 F.3d at 154 ("If a habeas petition is

14

stayed, the petitioner should be given a reasonable interval, normally 30 days, to file his application for state post-conviction relief, and another reasonable interval after the denial of that relief to return to federal court.  If a petitioner fails to meet either time-limit, the stay should be vacated <u>nunc</u> <u>pro</u> <u>tunc</u>.") (citations omitted).

Here, the Court is not faced with a "mixed" petition, nor is the Court faced with a petition asserting unexhausted claims protectively filed during the pendency of state post-conviction proceedings, <u>see</u>, <u>e.g.</u>, <u>Heleva v. Brooks</u>, 581 F.3d 187 (3d Cir. 2009) (stay-and-abeyance procedure may be used with respect to protectively-filed federal habeas petition whose claims are wholly unexhausted).  To the contrary, here Petitioner seeks to open new state post-conviction proceedings to assert new claims that have not been asserted in this pending Petition.

Moreover, Petitioner has failed to provide this Court with any evidence suggesting that the unexhausted claims are "potentially meritorious."  Indeed, the claims are not even minimally described.

Nor has Petitioner provided any explanation or evidence of good cause for his failure timely to exhaust the claims.  The conclusory statement that his proposed motion for new trial is based on "newly discovered evidence" is patently insufficient to demonstrate good cause for failure to have exhausted that claim.

Under these circumstances, this Court cannot find that it would be appropriate to stay this proceeding in order to permit Petitioner to return to state court to pursue his unexhausted claims.

In accordance with Rhines v. Weber, therefore, this Court will grant Petitioner leave to advise this Court whether he wishes to proceed with the exhausted claims asserted in the Petition or withdraw the Petition.  This Court takes no position as to whether any subsequently filed petition might be time-barred.

## IV.  CONCLUSION

For the reasons set forth above, Petitioner's request for a stay of this proceeding will be denied.  An appropriate order follows.


s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: August 16, 2012