**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TERENCE THOMPSON,         :
                       :    Civil Action No. 11-7164 (RMB)
        Petitioner,   :
                       :
        v.             :    **OPINION**
                       :
CHARLES WARREN, et al.,    :
                       :
        Respondents.  :

**APPEARANCES:**

Terence Thompson
New Jersey State Prison
Trenton, NJ 08625
    Petitioner pro se

Robin A. Hamett
Assistant Prosecutor
Camden County Prosecutor's Office
25 North Fifth Street
Camden, NJ  08102
    Counsel for Respondents

**BUMB**, District Judge

    Petitioner Terence Thompson, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Charles Warren and the Attorney General of New Jersey.

    This matter is presently before the Court pursuant to Petitioner's submission of two Motions [8, 12] to Amend the

Petition.   For the reasons stated herein, the Motions will be denied.

I.  <u>BACKGROUND</u>

A.   <u>Factual Background</u>

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> In the early morning hours of July 31, 1996, the Camden Police Department received a report of shots fired at the Pleasant Gardens Apartments.  Several officers responded to the scene where the body of Michael Lamb was found.  At least three shell casings were found at that time, and two additional casings were found in the daylight hours.  No firearms were recovered from the scene.  Bullets and bullet fragments were subsequently recovered from the victim's body during the autopsy.  The autopsy revealed that Lamb suffered thirteen fatal wounds from seven bullets that injured his right lung, liver, right adrenal gland, spinal cord, brain, intestines, and pelvis.
>
> Lamb was a drug dealer who had arranged to purchase drugs from Juan Collado for $15,000 in cash.  Collado was staying with his friend, Richard Almanzar, in the Pleasant Gardens Apartments.  Collado had traveled to Camden from New York about three weeks earlier to sell drugs with Almanzar's assistance.  Collado and Almanzar had been introduced to another man involved in the drug trade, Ronnie Leary, and had also been introduced to Lamb for the purpose of selling a large quantity of drugs to him.
>
> Although Collado had not previously sold drugs to Lamb, he arranged to do so on the night of July 30,

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

1996.  Early in the evening, Collado and Almanzar met
Leary and defendant at a pizzeria because Collado
wanted to learn more about Lamb.  While Collado was
speaking with Leary, Lamb paged Collado about
purchasing one and one-half kilos of cocaine.  Leary
told Collado that Lamb would likely purchase drugs from
him once or twice and then rob him or have him killed.
Collado asked Leary what he should do, Leary told him
to set up the deal, and he agreed to do it.

     The four men then planned to rob Lamb rather than
sell drugs to him.  The actual plan was for Collado and
Almanzar to meet Lamb, who would be told to be alone
and bring the money.  They would check the money and
have Lamb follow them in his car to the Pleasant
Gardens Apartments.  There, Leary and defendant were to
be hiding so that Collado could lead Lamb into an
ambush, and Leary and defendant could rob him.  Collado
and Almanzar arranged to meet Lamb later that night.
When they met, Lamb followed Collado and Almanzar to
the Pleasant Gardens Apartments.

     Upon arriving there, Collado and Lamb exited their
vehicles and walked down a sidewalk where Leary and
defendant were waiting in the bushes.  Defendant
emerged behind Collado and Lamb, planning to grab the
money.  However, Collado and Lamb turned around and saw
defendant coming at them.  Lamb pulled out his gun and
shot defendant.  Defendant and Lamb began wrestling,
and Leary and defendant began shooting Lamb, which both
Collado and Almanzar saw.  Collado grabbed the money
and ran to his car, where Almanzar was waiting.  Leary
and defendant then got into Leary's minivan, and both
vehicles drove away.

     The two vehicles met just outside the apartment
complex.  Realizing defendant had been shot, Leary said
that he would take defendant to the hospital.  He would
then contact Collado and Almanzar to meet, count the
money, and distribute each person's share.  Upon
returning to the Pleasant Gardens Apartments, Collado
and Almanzar were questioned by the police and taken to
the police station for further questioning.  The Camden
police arrested Leary on August 7, 1996, after he
admitted his involvement in Lamb's murder.  Collado and
Almanzar were also arrested for their involvement in
the homicide.

On October 23, 1996, two investigators from the Camden County Prosecutor's Office visited defendant in the hospital.  The investigators again spoke with defendant on October 25, 1996, after he was discharged. Defendant informed them that he was not fully truthful when he spoke with them on October 23, 1996, and he then confessed to the crimes.

State v. Thompson, Ind. No. 97-06-1623, 2011 WL 499394, *1-2

(N.J. Super. App.Div. Feb. 15, 2011).

B.   Procedural History

Following a jury trial,[2] Petitioner was convicted of robbery, felony murder, and related offenses.  On April 28, 2000, Petitioner was sentenced to an aggregate sentence of life in prison without parole.  On direct appeal, Petitioner raised the following claims, unsuccessfully:

POINT I - THE TRIAL COURT ERRED IN FAILING TO HOLD A HEARING TO DETERMINE WHETHER THE DEFENDANT'S PHYSICAL CONDITION PRECLUDED HIS COMPETENCY TO STAND TRIAL.

POINT II - THE DEFENDANT'S PHYSICAL CONDITION RENDERED HIM INCOMPETENT TO GIVE VOLUNTARY STATEMENTS. (PARTIALLY RAISED BELOW[.])

POINT III - THE TRIAL COURT ERRED BY IMPOSING AN EXCESSIVE SENTENCE.

A.   THE TRIAL COURT ERRED IN FAILING TO MERGE THE DEFENDANT'S CONVICTIONS FOR ROB[B]ERY AND POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE INTO HIS CONVICTION FOR FELONY MURDER.

B.   THE TRIAL COURT ERRED IN RUNNING THE DEFENDANT'S SENTENCE FOR POSSESSION OF A WEAPON

---

[2] The jury trial took place on nine nonconsecutive days between January 19 and February 10, 2000.  State v. Thompson, 2011 WL 499394 at *2.

WITHOUT A PERMIT CONSECUTIVELY WITH HIS OTHER CONVICTIONS.

State v. Thompson, 2011 WL 499394 at *3.  The Superior Court of New Jersey, Appellate Division, affirmed Petitioner's convictions but remanded for a sentencing modification.  On February 13, 2004, the trial court re-sentenced Petitioner, again sentencing him to life in prison without parole.  State v. Thompson, 2011 WL 499394 at *3.  The Supreme Court of New Jersey denied certification, State v. Thompson, 179 N.J. 373 (2004), and the Supreme Court of the United States denied certiorari, Thompson v. New Jersey, 543 U.S. 888 (Oct. 4, 2004).

On October 13, 2004, Petitioner filed a pro se verified petition for post-conviction relief in state court, which was later supported by a memorandum of law filed by counsel.  In the trial court, Petitioner raised the following PCR issues:

POINT ONE - COUNSEL['S] PERFORMANCE WAS DEFICIENT AND PETITION WAS PREJUDICED BY COUNSEL'S PERFORMANCE.

A.  COUNSEL['S] FAILURE TO CALL CO-DEFENDANT LEARY AS A WITNESS WAS PREJUDICIAL IN THAT DEFENDANT WAS DENIED A VIABLE DEFENSE TO CREATE REASONABLE DOUBT.

B.  COUNSEL FAILED TO INTERPOSE A TIMELY OBJECTION[] TO ACCOMPLICES JUAN COLLADO AND RICHARD ALMANZAR TESTIFYING FOR THE STATE WEARING HANDCUFFS AND PRISON GARBS [sic] AND AS SUCH DEFENDANT IS RESPECTFULLY REQUESTING AN EVIDENTIARY HEARING TO FURTHER DEVELOP THE RECORD.

C.  COUNSEL FAILED TO REQUEST ADEQUATE JURY INSTRUCTIONS ON ACCOMPLICE LIABILITY.

D.   COUNSEL['S] FAILURE TO REQUEST JURY
INSTRUCTIONS ON IMPERFECT SELF-DEFENSE LED TO A
COMPROMISE VERDICT.

State v. Thompson, 2011 WL 499394 at *3.

The trial court denied relief.  On appeal from the denial of

post-conviction relief, Petitioner raised the following issues:

POINT ONE - THE ORDER DENYING POST-CONVICTION RELIEF
SHOULD BE REVERSED BECAUSE THE DEFENDANT WAS DENIED HIS
RIGHT TO A FAIRLY CONDUCTED POST-CONVICTION RELIEF
HEARING (NOT RAISED BELOW).

(A) THE COURT ABUSED ITS DISCRETION IN RULING THAT
THE DEFENDANT DID NOT HAVE THE RIGHT TO BE PRESENT
AT A NON-EVIDENTIARY POST-CONVICTION RELIEF
HEARING.

(B) THE DEFENDANT WAS DENIED THE "OPPORTUNITY TO
SPEAK ON HIS OWN BEHALF" IN POST-CONVICTION
RELIEF.

POINT TWO - THE COURT ABUSED ITS DISCRETION BY APPLYING
THE R. 3:22-4 PROCEDURAL BAR IN DENYING POST-CONVICTION
RELIEF BECAUSE THE DEFENDANT'S FOURTEENTH AMENDMENT DUE
PROCESS RIGHT TO A FAIR TRIAL WAS VIOLATED.

POINT THREE - THE COURT ERRED IN DENYING POST-
CONVICTION RELIEF WITHOUT CONDUCTING A FULL EVIDENTIARY
HEARING BECAUSE TRIAL COUNSEL'S FAILURE TO OBJECT TO
STATE'S WITNESSES TESTIFYING IN PRISON GARB AND
SHACKLED; TRIAL COUNSEL'S FAILURE TO CALL CO-DEFENDANT
LEARY AS A DEFENSE WITNESS; TRIAL COUNSEL'S FAILURE TO
OBJECT TO THE TRIAL COURT'S JURY INSTRUCTIONS ON
ACCOMPLICE LIABILITY OR TO REQUEST A JURY INSTRUCTION
ON IMPERFECT SELF-DEFENSE; AND TRIAL COUNSEL'S FAILURE
TO OBJECT TO THE PROSECUTOR'S SUMMATION SATISFIED BOTH
PRONGS OF THE STRICKLAND/FRITZ TEST FOR INEFFECTIVE
ASSISTANCE OF COUNSEL, AND APPELLATE COUNSEL WAS
INEFFECTIVE FOR FAILURE TO RAISE THE ISSUE OF
INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL ON APPEAL.

POINT FOUR - THE COURT'S FULING DENYING POST-CONVICTION
RELIEF VIOLATED THE DEFENDANT'S RIGHT TO CONFRONTATION
AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED

6

STATES CONSTITUTION AND ARTICLE I, PARAGRAPHS 9 AND 10
OF THE NEW JERSEY CONSTITUTION.

POINT FIVE - DEFENDANT REASSERTS ALL OTHER ISSUES
RAISED IN DEFENDANT'S *PRO SE* SUBMISSIONS IN SUPPORT OF
POST-CONVICTION RELIEF.

State v. Thompson, 2011 WL 499394 at *3-4.  The Appellate

Division affirmed the denial of relief, State v. Thompson, 2011

WL 499394 (N.J. Super. App.Div. Feb. 15, 2011), and the Supreme

Court of New Jersey denied certification, 207 N.J. 35 (June 16,

2011).

This Petition followed.  Here, Petitioner asserts the

following grounds for relief:

A. GROUND ONE:
THE STATE COURT'S FULING THAT THE TRIAL COURT DID NOT
ERR IN FAILING TO HOLD A HEARING TO DETERMINE WHETHER
THE PETITIONER'S PHYSICAL CONDITION PRECLUDED HIS
COMPETENCY TO STAND TRIAL WAS CONTRARY TO CLEARLY
ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION
OF FEDERAL LAW, THEREFORE, THE WRIT SHOULD ISSUE.  ...

B. GROUND TWO:
THE STATE COURT'S RULING THAT THE PETITIONER'S PHYSICAL
CONDITION DID NOT RENDER HIM INCOMPETENT TO GIVE
VOLUNTARY STATEMENTS WAS CONTRARY TO CLEARLY
ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION
OF FEDERAL LAW, THEREFORE, THE WRIT SHOULD ISSUE.  ...

C. GROUND THREE:
THE STATE COURT'S RULING THAT PETITIONER WAS NOT
SUBJECTED TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY
COUNSEL'S FAILURE TO CALL CO-DEFENDANT LEARY AS A [sic]
WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN
UNREASONABLE APPLICATION OF FEDERAL LAW, THEREFORE, THE
WRIT SHOULD ISSUE.  ...

D. GROUND FOUR:
THE STATE COURT'S FULING THAT PETITIONER WAS NOT
SUBJECTED TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY
COUNSEL'S FAILURE TO OBJECT TO ACCOMPLICES JUAN COLLADO

7

AND RICHARD ALMANZAR TESTIFYING FOR THE STATE WEARING
HANDCUFFS AND PRISON GARBS WAS CONTRARY TO CLEARLY
ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION
OF FEDERAL LAW, THEREFORE, THE WRIT SHOULD ISSUE.  ...

E. <u>GROUND FIVE</u>:
THE STATE COURT'S FULING THAT PETITIONER WAS NOT
SUBJECTED TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY
COUNSEL'S FAILURE TO REQUEST ADEQUATE JURY INSTRUCTIONS
ON ACCOMPLICE LIABILITY WAS CONTRARY TO CLEARLY
ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION
OF FEDERAL LAW, THEREFORE, THE WRIT SHOULD ISSUE.  ...

F. <u>GROUND SIX</u>:
THE STATE COURT'S RULING THAT PETITIONER WAS NOT
SUBJECTED TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY
COUNSEL'S FAILURE TO REQUEST A JURY INSTRUCTION ON
IMPERFECT SELF-DEFENSE LED TO A COMPROMISED VERDICT WAS
CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN
UNREASONABLE APPLICATION OF FEDERAL LAW, THEREFORE, THE
WRIT SHOULD ISSUE.  ...

(Petition, Addendum Two.)[3]

In response to this Court's Notice and Order [2] advising

Petitioner of his rights under <u>Mason v. Meyers</u>, 208 F.3d 414 (3d

Cir. 2000), Petitioner filed a Motion [3] to Stay this action in

order to exhaust certain claims in state court.  The Motion

reads, in its entirety:

PLEASE TAKE NOTICE that the undersigned petitioner
shall make application before the District Court of New
Jersey, for an order permitting the petitioner to
return to State court to exhaust a Motion for a New
Trial Based on Newly Discovered Evidence; a Petition to
Correct an Illegal Sentence; and a Petition for Post-

_____

[3] With respect to all of these grounds, Petitioner states
that he will rely on the facts as detailed in the brief filed on
direct appeal by Appellate Counsel J. Stewart Borrow.  (Petition,
Addendum II.)  Petitioner does not otherwise set forth the facts
on which he relies, nor does he attach that brief to his
Petition.

Conviction Relief, to exhaust claims that are new, were not raised, and never adjudicated.

By Opinion and Order [4, 5] entered August 16, 2012, this Court denied the Motion to Stay, ordered the Petition served on Respondents, and directed Petitioner to advise the Court within 30 days thereafter whether he wished to proceed with the Petition as filed or withdraw it. The Court did not, at that time, order Respondents to answer. The Docket reflects that Respondents were served by certified mail on August 16, 2012.

Instead of complying with this Court's Order, on October 4, 2012, Petitioner filed a Motion [8] to Amend the Petition to assert a Ground Seven, as follows:

> The Petitioner was denied his right to Effective Assistance of Trial and Appellate counsel, right to a fair trial and due process of the law where trial counsel failed to argue that the Petitioner's statement is improperly obtained and where Appellate counsel failed to argue trial counsel's ineffectiveness for failure to investigate or raise issue.

(Motion [8] to Amend at 1.) In support of this proposed new ground for relief, Petitioner asserts that he was under the influence of Percocet (Oxy-Codone) at the time of both the October 23 and 25 interviews, and that trial and appellate counsel should have argued that the medication, in conjunction with Petitioner's wounds and "law enforcement['s] substantial psychological pressure and coercion," rendered his statements involuntary and inadmissible. (Motion [8] to Amend at 2.) Petitioner asserts that at the pre-trial suppression hearing he

9

testified that he had not been under the influence of these medications at the time he made his statements, but now argues that "even a cursory review" of his sworn statements would have shown the opposite. (Motion [8] to Amend at 3.) Petitioner asserts that he is making the Motion to Amend now "because the proof (evidence) was only recently uncovered." (Motion [8], attached Certification in Support.) Respondents have filed their Response [11] in Opposition, noting that the documents referenced in Petitioner's Motion are dated October 23, 1996, and September 18, 1998, and can hardly be considered newly-discovered evidence.

On October 22, 2012, Petitioner filed a second Motion [12] to Amend the Petition. In the second Motion to Amend, Petitioner does not set forth a proposed new eighth ground for relief. Instead, he argues in a rambling fashion that new, exculpatory evidence, not previously discoverable through the exercise of due diligence, establishes that no reasonable fact finder would have found him guilty in light of the evidence as a whole. In support of this broad argument, he states that he was under the influence of psychotropic drugs during the trial, Haldor and Percocet, which allegedly "altered [his] consciousness and affected his ability to assist and consult with counsel within a reasonable degree of rational understanding," in violation of his constitutional right to due process under the Fourteenth Amendment. (Motion [12] at 3.) Plaintiff further asserts that

10

he was in great pain during trial because prison authorities were not properly treating his wounds, allegedly in violation of the Eight Amendment. (Motion [12] at 4.)  In support of this second Motion to Amend, Petitioner attaches a transcript excerpt including testimony from a doctor as to whether Petitioner was under the influence of Percocet at the time he spoke with investigators in October 1996, not at the time of trial. Petitioner also attaches an Opinion by the Honorable Joseph E. Irenas of this Court, denying a motion for summary judgment in Thompson v. Owens, Civil Action No. 99-070 (D.N.J.), a separate civil action in which Petitioner asserted an Eight Amendment claim against correctional authorities for inadequate medical care of the gunshot wounds he had incurred at the time of the incident leading to his conviction, and which apparently required treatment for a substantial period of time during his trial and incarceration, until November, 2000.  That Opinion was entered on December 5, 2000, in an action filed in 1999, and settled in 2001.  See generally Thompson v. Owens, Civil Action No. 99-0070 (D.N.J.).  Finally, Petitioner has submitted some medical records from October 1996, not from the time of trial. (Docket Entry No. 13.)  In his Motion, Petitioner states that he attaches these documents "in order to support and substantiate a meritorious claim regarding constitutional errors and substandard legal representation throughout the defendant's judicial proceedings."

(Motion [12] at 6.)  Thus, it appears that these attachments are the referenced newly-discovered "exculpatory" evidence.  As Petitioner has already asserted in the original Petition a claim that the trial court committed constitutional error by failing to hold a hearing to determine his competency to stand trial, the Court construes the Motion [12] to Amend as seeking to assert a claim of ineffective assistance of trial and appellate counsel with respect to the litigation of that issue.

Respondents have filed their Response [14] arguing that evidence of Petitioner's medical condition during his interviews and criminal proceedings is neither newly discovered nor exculpatory and that he should not be permitted to amend the Petition to assert this claim.  Petitioner has replied [15] and this matter is now ready for decision.

## II.  <u>ANALYSIS</u>

Rule 2(c) of the Rules Governing Section 2254 Cases requires the federal habeas petitioner to specify all the grounds for relief available to him and to state the facts supporting each ground.  Pursuant to 28 U.S.C. § 2242, a habeas petition, "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  Rule 15 of the Federal Rules of Civil Procedure, which governs amended and supplemental pleadings, provides that a pleading may be amended once, as a matter of course, either 21 days after service or, if the

pleading is one to which a responsive pleading is required, 21

days after service of a responsive pleading or a motion under

Rule 12(b) (regarding the pleading of certain defenses), 12(e)

(for more definite statement), or 12(f) (to strike), whichever is

earlier.  Fed.R.Civ.P. 15(a)(1).  In all other cases, a pleading

may be amended <u>only</u> with the opposing party's written consent or

the court's leave.  Fed.R.Civ.P. 15(a)(2).  "The court should

freely give leave when justice so requires."  <u>Id.</u>

Here, the pleading is not one to which a responsive pleading

is required.  <u>See</u> Rules Governing § 2254 Cases, Rules 4 and 5(a).

In addition, more than 21 days passed between service of the

Petition and Petitioner's submission of his Motions to Amend.

Accordingly, Petitioner may amend here only if the opposing

parties consent, which they do not, or with leave of court.

In accordance with the admonition that leave to amend should

be freely given, the Supreme Court has instructed the lower

courts as follows:

> If the underlying facts or circumstances relied upon by
> a plaintiff may be a proper subject of relief, he ought
> to be afforded an opportunity to test his claim on the
> merits.  In the absence of any apparent or declared
> reason -- such as undue delay, bad faith or dilatory
> motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc.
> -- the leave sought should, as the rules require, be
> 'freely given.'  Of course, the grant or denial of an
> opportunity to amend is within the discretion of the
> District Court, but outright refusal to grant the leave
> without any justifying reason appearing for the denial

> is not an exercise of discretion; it is merely abuse of
> that discretion and inconsistent with the spirit of the
> Federal Rules.

Foman v. Davis, 371 U.S. 178, 182 (1962).  A district court may

properly deny leave to amend where the proposed amended pleading

would be subject to dismissal.  See, e.g., Great Western Mining &

Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3d Cir.

2010); Riley v. Taylor, 62 F.3d 86, 90 (3d Cir. 1995).  Here,

because the proposed amendments are untimely and unexhausted,

amendment would be futile.

Federal habeas challenges to a state court conviction are

subject to a one-year limitations period.  28 U.S.C. § 2244(d).

The federal limitation period runs from the latest of:

> (A) the date on which the judgment became final by the
> conclusion of direct review or the expiration of the
> time for seeking such review;
>
> (B) the date on which the impediment to filing an
> application created by State action in violation of the
> Constitution or laws of the United States is removed,
> if the applicant was prevented from filing by such
> State action;
>
> (C) the date on which the constitutional right asserted
> was initially recognized by the Supreme Court, if the
> right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on
> collateral review; or
>
> (D) the date on which the factual predicate of the
> claim or claims presented could have been discovered
> through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The limitations period is applied on a

claim-by-claim basis.  See Fielder v. Verner, 379 F.3d 113 (3d

Cir. 2004), <u>cert. denied</u>, 543 U.S. 1067 (2005); <u>Sweger v.</u>
<u>Chesney</u>, 294 F.3d 506 (3d Cir. 2002).  The federal limitations
period is tolled while a "properly filed" application for state
post-conviction relief is pending.  28 U.S.C. § 2244(d)(2).  Any
amendment filed after the one-year federal limitations period has
run is viable only if it "relates back" to the date of the
original petition.  <u>See</u> <u>Mayle v. Felix</u>, 545 U.S. 644 (2005);
Fed.R.Civ.P. Rule 15(c).

    Here, Petitioner's conviction became "final," and the
limitations period began to run, on October 4, 2004, when the
United States Supreme Court denied certification, unless a later
date under § 2244(d)(1)(B), (C), or (D), applies.  Petitioner
does not allege any impediment created by state action,
§ 2244(d)(1)(B), or any newly-recognized constitutional right,
§ 2244(d)(1)(C).  Instead, he argues that the claims he seeks to
assert by amendment are based upon "newly-discovered evidence,"
presumably relying upon § 2244(d)(1)(D).  Importantly, however,
the limitations period of Subsection (d)(1)(D) does not begin to
run upon the discovery of any new evidence that might support a
claim.  Rather, the limitations period begins to run on the date
on which "the factual predicate" of the claim "could have been
discovered through the exercise of due diligence."  <u>See</u>, <u>e.g.</u>,
<u>Ramos v. Taylor</u>, Civil Action No. 12-2549, 2013 WL 1901074, *4
(D.S.C. April 16, 2013) (where petitioner could have uncovered

evidence regarding lab reports, and chain of custody of drugs that were the subject of the lab report, before he entered his guilty plea, federal habeas limitations period runs from date conviction became final, not from date that petitioner actually obtained lab reports), report and recommendation adopted, 2013 WL 1901233 (D.S.C. May 7, 2013); Best v. Bodison, Civil Action No. 10-1381, 2010 WL 5479878, *5 (Dec. 8, 2010) ("in the absence of some facts showing that a petitioner was prevented from consulting public records, the statute runs from the time he/she could have seen the basis for the claim on the record, not from the time that he/she actually did see it" (emphasis in original)), report and recommendation adopted, 2011 WL 9035 (D.S.C. Jan. 03, 2011), as amended (Jan. 06, 2011), appeal dismissed, 433 Fed.Appx. 155 (4th Cir. 2011); Jones v. Neotti, Civil Action No. 09-8819, 2010 WL 3985325, *4 (C.D. Ca. Sept. 1, 2010) ("A claim accrues under 18 U.S.C. § 2244(d)(1)(D) on the date a petitioner became aware, or should have become aware, of the 'factual predicates' of those claims, not on some later date when a petitioner believes that he has amassed enough evidence to prove his claims."), report and recommendation adopted, 2010 WL 4007283 (C.D. Cal. Oct. 8, 2010).

Certainly, here, the factual predicates for the claims Petitioner seeks to assert by amendment were peculiarly within his personal knowledge at the time he made his statements to

police in October 1996 and during his trial, which ended in April 2000.  Even if this Court were to allow that Petitioner was so incapacitated by medication and pain, until his injuries were resolved, that he could not "discover" the factual predicates of these claims through the exercise of due diligence during that time, he alleges (through the opinion he attached as support for his motion) that his injuries were finally resolved in November 2000, years before his conviction became final on October 4, 2004.  Accordingly, the federal habeas limitations period for all of Petitioner's new claims began to run on October 4, 2004.

The federal limitations period is tolled during the period when a properly filed state petition for post-conviction relief is pending.  28 U.S.C. § 2244(d)(2).  Here, Petitioner filed his state petition for post-conviction relief on October 13, 2004, nine days after the federal limitations period began to run.  His state post-conviction relief proceedings were pending until June 16, 2011, when the Supreme Court of New Jersey denied certification.  This Petition is deemed filed on November 16, 2011,[4] after another 153 days of the one-year federal limitations period had expired.

---

[4] Pursuant to the prison "mailbox rule," a prisoner's federal habeas petition is deemed filed on the date he delivered it to prison officials for mailing.  See Houston v. Lack, 487 U.S. 266, 270-71 (1988); Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1988).

17

The Motions [8, 10] to Amend, however, are not deemed filed until September 28, 2012, and October 18, 2012, after the federal limitation period expired on June 7, 2012.[5]  Any amendment filed after the one-year federal limitations period has run is viable only if it "relates back" to the date of the original petition. See Mayle v. Felix, 545 U.S. 644 (2005); Fed.R.Civ.P. Rule 15(c). "An amendment to a pleading relates back to the date of the original pleading when:  ... (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading."  Fed.R.Civ.P. 15(c)(1)(B).  Thus, for an amended petition to relate back to the date of the original petition, both must state claims "that are tied to a common core of operative facts."  Mayle v. Felix, 545 U.S. at 664 (rejecting the argument that the language "conduct, transaction, or occurrence" of Rule 15(c) could be construed broadly to refer to the same "trial, conviction, or sentence").

Here, Petitioner's proposed new claims of ineffective assistance of trial and appellate counsel with respect to their failure to challenge the admissibility of Petitioner's statements

---

[5] Although the federal limitations period is also subject to equitable tolling, see, e.g., Holland v. Florida, 130 S.Ct. 2549 (2010), Petitioner has alleged no facts that would permit the application of equitable tolling.  See Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 168-19 (3d Cir. 1998) (detailing the circumstances under which equitable tolling is appropriate).

to police and his competence to stand trial do not arise out of a "common core of operative facts" with any of the six claims asserted in the original Petition.  <u>Cf.</u>, <u>e.g.</u>, <u>Schneider v. McDaniel</u>, 674 F.3d 1144 (9th Cir. 2012) (core facts underlying a claim of trial court error in denying motion to sever are different in type from a claim of attorney error with respect to the untimeliness of the motion to sever), <u>cert. denied</u>, 133 S.Ct. 579 (2012).

Moreover, Petitioner has failed to exhaust in state court the proposed new grounds for relief.  A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ."  28 U.S.C. § 2254(b)(1).  <u>See also</u> <u>Rose v. Lundy</u>, 455 U.S. 509, 515 (1982); <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513 (3d Cir. 1997), <u>cert. denied</u>, 532 U.S. 919 (2001) (finding that Supreme Court precedent and the AEDPA mandate that prior to determining the merits of a petition, a court must consider whether the petitioner is required to present his or her unexhausted claims to the state's courts).  The petitioner generally bears the burden to prove all facts establishing exhaustion.  <u>Lines v. Larkins</u>, 208 F.3d 153, 159 (3d Cir. 2000).

A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) (requiring state prisoners, in order to fully exhaust their claims, "to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").  The claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition.  Picard v. Connor, 404 U.S. 270, 275 (1971); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).  Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same.  Picard at 277-78; Greene v. Palakovich, 606 F.3d 85, 93 (3d Cir. 2010), affirmed sub nom Greene v. Fisher, 132 S.Ct. 38 (2011).  None of the proposed new grounds for relief are the "substantial equivalent" of claims exhausted in state court.

This Court has already found that it would not be appropriate to stay this proceeding in order to permit Petitioner

to exhaust new claims in state court, and nothing in the Motions or supporting briefs suggests any reason to stay this proceeding now.  As this Court has previously noted, Petitioner has been aware of the factual basis for these proposed new claims for many years and has presented this Court with no explanation for his failure to exhaust those claims or to assert them in the original Petition.

Accordingly, for all the foregoing reasons, this Court finds that justice does not require it to grant Petitioner leave to amend his Petition at this late date.

### III.  CONCLUSION

For the reasons set forth above, Petitioner's Motions [8, 12] to Amend will be denied.  Respondents will be ordered to answer the Petition as filed.  An appropriate order follows.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: June 25, 2013