NOT FOR PUBLICATION

```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
                          CAMDEN VICINAGE
```

_____
                                         :
TERENCE THOMPSON,                        :
                                         :   Civil Action No. 11-7164 (RMB)
              Petitioner,                :
                                         :
         v.                              :          **OPINION**
                                         :
CHARLIE WARREN, et al.,                  :
                                         :
              Respondents.               :
_____:

**BUMB**, District Judge:

   This matter comes before the Court upon Respondents' supplemental answer, Petitioner's supplemental traverse and Respondent's sur-reply.  See Docket Entries Nos. 26, 27 and 28. For the reasons expressed below, this matter will be stayed until Petitioner's traversed Point Three is duly exhausted in all three levels of the state court or, alternatively, Petitioner has his traversed Point Three dismissed by the state courts solely on procedural grounds and, then: (a) establishes a valid excuse for his procedural default; and (b) shifts the burden to Respondent by establishing, through evidence other than Petitioner's self-serving assertion, a reasonable probability that he would have accepted the offered guilty plea *and* that he rejected that offer because of his trial counsel's failure to inform him of his maximum sentencing exposure.

The factual events underlying Petitioner's conviction, as well as the developments that took place in the state forum and then before this Court have already been extensively detailed in this Court prior decision. See Docket Entry No. 24; see also Thompson v. Warren, 2014 U.S. Dist. LEXIS 104567 (D.N.J. July 31, 2014) (replicating that decision). Since a detailed summary of the same would be provided at the final resolution of this matter and, at this juncture, this Court writes solely for the parties, it shall suffice to state that, in July 1996, Petitioner, a career offender: (a) partook in the robbery of Michael Lamb, a drug dealer; and (b) acting together with one of Petitioner co-conspirators, shot and killed Lamb after Lamb wrestled with and wounded Petitioner. See Thompson, 2014 U.S. Dist. LEXIS 104567, at *4. Three years later, Petitioner was charged with Lamb's murder, armed robbery, felony-murder, conspiracy to commit robbery and weapon-related offenses. See id. at *4-5.

Eventually, Petitioner and his co-conspirator who partook in killing Lamb were tried, and the jury acquitted Petitioner of the murder charge but found him guilty of the remaining offenses. See id. at *5-6. In light of his criminal history, he was sentenced to life imprisonment without parole and, upon re-sentencing, received the same term. See id. at *6 and n.7. On December 9, 2011, being unsuccessful in his direct appellate and post-conviction relief ("PCR") applications, see State v.

Thompson, 207 N.J. 35, 21 A.3d 1186 (June 16, 2011) (denial of certification as to Petitioner's PCR application), Petitioner commenced the § 2254 matter at bar.

Initially, he asserted six grounds ("Original Grounds"). See Thompson, 2014 U.S. Dist. LEXIS 104567, at *8-9 ("Ground I: Petitioner's physical condition precluded his competency to stand trial; Ground II: Petitioner's physical condition rendered him incompetent to give his confession to the investigator during the second visit; Ground III: Petitioner was subjected to ineffective assistance of trial counsel by counsel's failure to call [Petitioner's co-conspirator] as a witness; Ground IV: Petitioner was subjected to ineffective assistance of trial counsel by counsel's failure to object to [other co-conspirators'] testi[monies] while [they were] wearing handcuffs and prison garbs; Ground V: Petitioner was subjected to ineffective assistance of trial counsel by counsel's failure to request adequate jury instructions on accomplice liability; and Ground Six: Petitioner was subjected to ineffective assistance of trial counsel by counsel's failure to request a jury instruction on imperfect self-defense") (ellipses and original brackets omitted).

Being informed of his rights under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), Petitioner expressed an interest in obtaining a stay and abeyance, but he did not articulate a colorable claim

in support of that request, as required under Rhines v. Weber, 544 U.S. 269 (2005). See Docket Entry No. 3. Therefore, this Court was constrained to find a stay and abeyance unwarranted and renewed its Mason notice to Petitioner. See Docket Entries Nos. 4 and 5. In response, Petitioner sought to amend his Petition by adding a claim ("Supplemental Ground") that he "was denied his rights because trial counsel failed to argue that his statement to the investigator was improperly obtained and appellate counsel failed to argue trial counsel's ineffectiveness for failure to investigate or raise this issue." Thompson, 2014 U.S. Dist. LEXIS 104567, at *7-8 (quoting Docket Entry No. 8) (ellipsis omitted). At that point, this Court directed Respondent to answer Petitioner's then-raised Grounds, and Respondent duly complied. See Docket Entries Nos. 19 and 20.

Being served with Respondent's answer, Petitioner traversed. See Docket Entry No. 23. However, his traverse raised six entirely new points ("Traversed Points") that did not correspond either to the Original Grounds raised in the Petition or to the Supplemental Grounds he attempted to add. See id.; see also Thompson, 2014 U.S. Dist. LEXIS 104567, at *39-42 and n.25. Thus, upon Petitioner's submission of his traverse, the total number of his challenges reached thirteen, and – due to Petitioner's mode of litigation – Respondent was neither informed

4

of nor had even an opportunity to respond to the last six of these thirteen challenges.

Mindful of this problematic influx of properly and improperly raised challenges, this Court addressed the merits of the six Original Grounds answered to by Respondent, as well as the Supplemental Ground and even the Traversed Points. See id. at *13-49 (addressing each of Petitioner's challenges and dismissing all of them, as facially meritless, short of one Traversed Point ("Point Three")). With regard to this Point Three, this Court observed as follows:

> Petitioner's traversed Point Three assert[s] that Petitioner was unaware of his sentencing exposure at the time he rejected the prosecutor's plea offer. . . . [T]he Court of Appeals "held in United States v. Day, 969 F.2d 39 (3d Cir. 1992), that a petitioner who turned down an advantageous plea offer before trial and later was convicted might be entitled to accept the offer even after trial if he rejected the offer because of constitutionally deficient advice from an ineffective attorney." Ramseur v. Beyer, 983 F.2d 1215, 1241 (3d Cir. 1992) . . . . [I]f a petitioner establishes, rather than merely asserts, his counsel's failure to advise him as to his maximum sentencing exposure in connection with the petitioner's rejection of the plea deal, that petitioner: (a) satisfies the first prong of the Strickland test, see Day, 969 F.2d 39; but he still (b) must meet the second Strickland prong by establishing prejudice. See Day, 969 F.2d 39; Aeid v. Bennett, 296 F.3d 58, 62 (2d Cir. 2002) (a habeas petitioner is required to show reasonable probability that he would have accepted a plea bargain if he had been accurately informed of sentencing ranges he faced upon a plea and upon conviction after trial); see also Purdy v. United States, 208 F.3d 41, 49 (2d Cir. 2000) (to show prejudice under Strickland, a habeas petitioner "must demonstrate a reasonable probability that but for [his defense counsel's]

5

> deficiencies, [he] would have plead guilty"); accord Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (setting forth the threshold test). Here, Petitioner's traversed Point Three, while undoubtedly improperly raised, still warrants further review. At this juncture, Petitioner offered this Court nothing but his bald assertion that his counsel failed to advise him about his maximum sentencing exposure and, regardless of Petitioner's prior criminal history, Petitioner was unaware of the sentence enhancement he could face. Respondents were neither aware of nor had an opportunity to answer that claim or a reason to provide this Court with the relevant record, e.g., such as Petitioner's counsel's affidavit, written exchanges between Petitioner and his counsel, or other evidence.

Id. at *46-48.

Upon so observing, this Court directed supplemental briefing, see Docket Entry No. 25 (including, inter alia, Respondent's obligation to develop the factual record with regard to Petitioner's Point Three). The submissions at bar followed.

Respondent's supplemental answer asserted that the Point Three was untimely since it was raised more than a year after Petitioner's PCR process had completed. See Docket Entry No. 26, at 3-8. Respondent also pointed out that Petitioner never raised his Point Three challenges in state courts, either on direct appeal or during his PCR proceedings, and that Petitioner never even mentioned such a challenge until he filed his traverse. See id. at 8-16. Therefore, Respondent urged this Court to dismiss

6

Point Three as untimely, unexhausted and procedurally defaulted. See id. at 3-16.[1]

Petitioner's supplemental traverse: (a) indicated that Petitioner had no evidence, short of his self-serving assertions, that his trial counsel failed to notify him of his maximum sentencing exposure, and that such alleged omission impacted Petitioner's decision-making process and caused him to reject the guilty plea offer; and (b) objected to Respondent's efforts to obtain records of Petitioner's interactions with his trial counsel. See Docket Entry No. 27. In other words, Petitioner's traverse de facto invited this Court to: (a) accept Petitioner's assertions as true; and (b) deprive Respondent of any opportunity to rebut them. See id; see also Docket Entry No. 29 (detailing Petitioner's efforts to obstruct Respondent's procurement of the needed records).

As the analysis below details, Respondent's position as to timeliness, exhaustion and procedural default is erroneous, and Petitioner's arguments are unavailing.

---

[1] However, in compliance with this Court' directive and mindful of this Court's observation that this Court cannot completely rule out the possibility of resolving Petitioner's Point Three on the merits, Respondents complied with this Court's order by seeking records of Petitioner's interactions with his trial counsel so to ensure that the state courts and/or this Court would have an ample record to resolve Petitioner's Point Three on the merits. See Docket Entry No. 28.

While the failure to exhaust state remedies does not deprive a federal court of subject matter jurisdiction to consider the merits of a habeas corpus application, it is indeed a statutory requirement of every § 2254 petition that federal constitutional claims be raised and addressed on the merits in all available levels of the state court prior to the filing of a habeas petition in the federal court.  See Granberry v. Greer, 481 U.S. 129, 131 (1987); Rose v. Lundy, 455 U.S. 509, 516-18 (1982); Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).[2]  Where any available state procedure remains, even if only theoretically, the claims cannot be deemed exhausted.  See 28 U.S.C. § 2254(c).  Correspondingly, district courts are obligated to dismiss habeas petitions containing unexhausted claims, even if it is not likely that a state court will consider the claims on the merits.  See Rose, 455 U.S. at 522; Banks v. Horn, 126 F.3d 206, 212-14 (3d Cir. 1997); see also Toulson, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for

---

[2] This means that both the legal theory and factual predicate of each claim presented for federal habeas review must be materially the same as those of the corresponding claim presented to all levels of state court.  See Picard v. Connor, 404 U.S. 270, 275-77 (1971).

failure to exhaust state remedies"). Analogously, if a petition contains a mix of duly exhausted and unexhausted claims (such petitions are referred to as "mixed" petitions), the petition is also subject to dismissal for failure to exhaust unless: (1) the petitioner withdraws all his unexhausted challenges; or (2) (s)he duly obtains "stay and abeyance" under Rhines, 544 U.S. 269, with the goal of exhausting his not-withdrawn unexhausted claims in the state court; or (3) the petitioner's unexhausted challenges are so facially meritless that they warrant denial of habeas relief under § 2254(b)(2) regardless of the failure to exhaust. See Mahoney v. Bostel, 2010 U.S. App. LEXIS 3916, at *5-6 (3d Cir. Feb. 24, 2010).

However, a qualitatively different analysis applies to those challenges with regard to which the petitioner establishes that he *cannot* obtain state court review. Section 2254(b)(1)(B)(I) excuses exhaustion where there is "an absence of available State corrective process." 28 U.S.C. § 2254(b)(1)(B)(I); see also Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (per curiam). A habeas petition containing claims that are not only unexhausted but also *expressly found* procedurally barred from state review by all levels of the state court, cannot be dismissed as unexhausted because such claims qualify as "procedurally defaulted" for the purposes of federal habeas review, and the doctrine of procedural

default might excuse one's failure to exhaust.[3]  See Toulson, 987 F.2d at 987; accord Coleman, 501 U.S. at 730-32.  That said, while procedural default might operate as an excuse to the exhaustion requirement, it is a double-edged sword, i.e., the doctrine of procedural default was not created as an incentive for state litigants to circumvent state court review.  When the petitioner's failure to comply with a state procedural rule has actually prevented the state courts from reaching the merits of his federal claims, federal habeas review of those claims is ordinarily barred, see YLST v. Nunnemaker, 501 U.S. 797, 801 (1991), 'unless the habeas petitioner can show 'cause' for the default and 'prejudice' attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice."  Harris v. Reed, 489 U.S. 255, 262 (1989) (citations and internal quotation marks omitted); accord Coleman, 501 U.S. at 750.

At this juncture, Petitioner's Point Three, while undoubtedly unexhausted, cannot possibly qualify as procedurally

---

[3]  Hence, the concept of procedural default is qualitatively different under the state law and under federal habeas law.  In addition, it shall be noted that a claim would qualify as procedurally defaulted for the purposes of federal habeas review only if it was left entirely unaddressed by the state court on its merits.  In other words, if the state court dismisses a claim on procedural grounds and, in addition or in the alternative, also dismisses it on its merits, that claim is deemed properly exhausted for the purposes of federal habeas review.  This is so because any dismissal on the merits qualifies as exhaustion.

defaulted and will not qualify as such until and unless all three levels of the state court actually refuse to consider that Point Three on its merits. It follows then that Respondent's application for dismissal of the Point Three as procedurally defaulted is premature at this juncture.

Analogously, Respondent's position as to untimeliness of Point Three is incorrect under the circumstances presented here.[4] While Respondent duly reiterated this Court's observation that Petitioner's Point Three was improperly raised in his traverse, this Court cannot capitalize on the period of time during which this matter has been pending in this District in order to find Petitioner's Point Three untimely. See Urcinoli v. Cathel, 546 F. 3d 269, 272 (3d Cir. 2008).[5]

---

[4] True, under Munchinski v. Wilson, 694 F.3d 308, 327 (3d Cir. 2012), different habeas claims might be subject to different one-year periods of limitations. That happens if the factual predicate underlying a certain claim becomes discoverable, through the exercise of due diligence, later than the factual predicates underlying other claims. However, the rather unique Munchinski scenario is not present here: Petitioner's factual predicates underlying his Point Three was discoverable, at the very latest, upon his sentencing and long before his period of limitation as to all his § 2254 claims was triggered. Therefore, the very same period of limitations governs all his Original Grounds, his Supplemental Ground and all his Traversed Points.

[5] In Urcinoli, the Court of Appeals determined that equitable tolling was warranted where the District Court's dismissal of a § 2254 petition (that was timely filed but then dismissed as unexhausted when the period of limitations already expired) would effectively prevent the petitioner from seeking habeas relief on the merits. See Urcinoli, 546 F. 3d at 272.

Moreover, this Court is mindful of Petitioner's initial, albeit defunct, application for a stay and abeyance. Cf. Taylor v. Horn, 504 F. 3d 416, 426-27 (3d Cir. 2007) (establishing the relation-back principle).[6] Indeed, had Petitioner's initial application for a stay and abeyance duly articulated his Point Three challenge, that challenge – even if consisting solely of Petitioner's self-serving assertions – would still have qualified as a colorable claim for the purposes of the Rhines analysis, which is a broad test laden with public policy considerations favoring review on the merits.[7] See Peterson v. Warren, 2013 U.S. Dist. LEXIS 106941, at *2, n.1 (D.N.J. July 30, 2013) ("[T]he case law suggests that, when faced with an ambiguous situation, the district court should, out of abundance of

---

[6] Contrary to Respondent's impression, a litigant's habeas claim "relates back" to the litigant's other habeas claims that were raised previously if the new claim attacks the very same judgment of conviction. The relation-back doctrine, as applied in habeas review, does not limit the later-raised claims to mere elaborations on the previously raised claims. If a litigant attacks the assistance of defense counsel during a criminal proceeding that resulted in a conviction, the litigant's later-raised attacks on the same defense counsel's performance during the same criminal proceeding would necessarily relate back to his/her original attacks, even if the later-raised attacks are based on the counsel's actions other than those underlying the litigant's original attacks.

[7] The rationale of Respondent's position that Petitioner's Point Three does not relate to the challenges raised in the Petition is not entirely clear to this Court. Petitioner's Point Three attacks Petitioner's conviction on the grounds of his trial counsel's allegedly deficient performance, and Petitioner's Original Grounds and Supplemental Grounds attempt to do the same.

caution, strive to err on the side of ensuring the litigant's opportunity to seek federal habeas review of all claims he wishes to raise) (relying on Gully v. Ortiz, 2007 U.S. Dist. LEXIS 77825 (D.N.J. Oct. 19, 2007) (granting petitioner a stay out of abundance of caution, even though he failed to articulate clear grounds for a stay), certif. denied, 2008 U.S. App. LEXIS 28438 (3d Cir. Feb. 14, 2008)); see also Ellington v. Overmyer, 2014 U.S. Dist. LEXIS 119763, at *6-7 (M.D. Pa. Aug. 27, 2014) (same, collecting cases); Matthews v. Cameron, 2014 U.S. Dist. LEXIS 69317, at 12 (M.D. Pa. May 21, 2014) (relying on Crews v. Horn, 360 F. 3d 146 (3d Cir. 2004), to grant stay out of "an abundance of caution").

Correspondingly, this Court will read Petitioner's Point Three challenges into his initial defunct application for a stay and abeyance. With that, this Court will stay this matter so to allow Petitioner an opportunity to duly exhaust his Point Three in all three levels of the state court.[8] And, because the Court of Appeals has held that thirty days is a reasonable length of time to permit the filing of the post-conviction petition, and

---

[8] While Petitioner's Point Three, if raised by means of his second PCR application, would be untimely under the state law, the governing state rule vests state courts with discretion to excuse untimeliness upon a showing of excusable neglect. See N.J. Ct. R. 3:22-12(a). This Court, therefore, has no reason to speculate that the state courts would decline to: (a) resort to their Rule 3:22-12(a) power; and (b) address Petitioner's Point Three on the merits.

that the petitioner should be given another thirty-day interval after the denial of that relief to return to federal court, see Crews, 360 F.3d 146, this Court will direct Petitioner to: (a) raise his Point Three before the Law Division within thirty days from the date of entry of the Order accompanying this Opinion by filing a second PCR application presenting to the state courts all the facts upon which Petitioner bases his Point Three; and then (b) return to this Court within thirty days from obtaining the disposition of the New Jersey Supreme Court as to that Point Three.[9]

In connection with the foregoing, and recognizing that the proceedings might ensue before this Court upon Petitioner's completion of his exhaustion efforts as to his Point Three, this Court stresses that Petitioner's "objections" to Respondent's efforts to obtain the relevant records are misplaced. As Respondent's sur-reply extensively detailed, Petitioner cannot simultaneously: (a) maintain that his interactions with his trial counsel shall remain undisclosed under the attorney-client privilege; and yet (b) pursue his Point Three challenges on the basis of his self-serving assertions that these interactions did

---

[9] In the event Petitioner elects not to exhaust his Point Three in the state courts, he may withdraw his Point Three challenges for the purposes of this Court's habeas review. In such event, Petitioner shall notify this Court of his election in writing submitted within thirty days from the date of entry of the Order accompanying this Opinion.

14

not contain any statement from his counsel about Petitioner's maximum sentencing exposure and that such omission caused Petitioner to forfeit the plea offer. Simply put, Petitioner cannot deprive Respondents of relevant evidence.

Accordingly, Respondents will be expressly directed to continue with their efforts seeking to obtain all relevant records, including Petitioner's trial counsel's affidavit, if production of such affidavit is feasible and: (a) make these records available to the state courts; (b) file these records in the instant matter; and (c) serve these records upon Petitioner.[10]

---

[10] Hence, in the event the state courts of all three levels deny Petitioner's second PCR application raising his Point Three, and such denial is rendered without reaching the merits of this challenge, Petitioner shall return to this Court by establishing: (a) a viable basis for excuse of his procedural default; and (b) shifting the burden to Respondents by reflecting on the records served upon him and offering this Court more than Petitioner's self-serving allegations that Petitioner's trial counsel failed to advise him of his maximum sentencing exposure and that alleged failure caused Petitioner to forfeit the plea offer. The Court takes this opportunity to remind the parties that

> [a]n attorney's performance is deemed deficient when the advice a defendant received "was so incorrect and so insufficient that it undermined the defendant's ability to make an intelligent decision about whether to accept the plea offer." Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting Day, 969 F.2d at 43 (3d Cir. 1992)). However, an attorney's inaccurate prediction of his client's probable sentence, standing alone, will not satisfy the "prejudice" prong of the ineffective assistance test. See United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995) (counsel's inaccurate prediction about sentencing generally not

For the foregoing reasons, this matter will be stayed until Petitioner duly exhausts his Point Three or properly establishes procedural default as to that Point Three (or elects to withdraw his Point Three). In the interim, this Court's determinations as to whether an evidentiary hearing is warranted and whether a certificate of appealability shall issue will remain reserved. Moreover, in light of the potential length of the state court PCR process, this matter will remain in administrative termination. See Papotto v. Hartford Life & Accident Ins. Co., 731 F.3d 265

---

sufficient to sustain claim of ineffective assistance), overruled on other grounds, 520 U.S. 751 (1997); Knight v. United States, 37 F.3d 769, 775 (1st Cir. 1994) (same).

Francisco v. United States, 2010 U.S. Dist. LEXIS 9337, at *12-13 (D.R.I. Feb. 1, 2010) (original brackets omitted); see also Evans v. Dir. of Dep't of Corr., 2008 U.S. Dist. LEXIS 23044, at *13-15 (E.D. Va. Mar. 24, 2008) ("In [United States v. Merritt, 102 F. App'x 303, 307 (4th Cir. 2004)], the Fourth Circuit stated that under Strickland/Hill, the proper inquiry is first, whether the defendant has demonstrated "that his trial counsel provided him gross misadvice regarding his sentencing exposure, and, if so, whether but for this gross misadvice, there is a reasonable probability that the defendant would have accepted the plea agreement specifying a lower sentence of imprisonment.' . . . Courts generally reject a defendant's self-serving statement that, but for counsel's misadvice, the defendant would have accepted the plea offer, unless such an assertion is coupled with some objective evidence") (citing Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1298 n.19 (4th Cir. 1992); Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986), original brackets and ellipses omitted).

(3d Cir. 2013) ("administrative closings [are not final dismissals on the merits; rather, they] are a practical tool used by courts to prune overgrown dockets").[11]

An appropriate Order follows.

                                            s/Renée Marie Bumb
                                            **RENÉE MARIE BUMB**
                                            **United States District Judge**

Dated: January 7, 2015

---

[11] This Court will expressly retain its jurisdiction over this matter until Petitioner's Point Three challenges are resolved, procedurally and/or on the merits, or withdrawn.