**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| TERENCE THOMPSON, | : |
| | : Civil No. 11-7164 (RMB) |
| Petitioner | : |
| | : |
| v. | : **OPINION** |
| | : |
| CHARLES WARREN, *et al.*, | : |
| | : |
| Respondents | : |
| | : |

**BUMB**, District Judge

This matter has been reopened before the Court upon lifting the stay imposed while Petitioner exhausted his state court remedies, pursuant to 28 U.S.C. § 2254, on one remaining claim. Respondents have filed an answer to the exhausted claim. (Answer, ECF No. 37.) Petitioner filed a reply brief on April 8, 2019 and a supplemental reply on November 4, 2019. (Petr's Reply, ECF Nos. 38, 43.) The petition will be determined on the record pursuant to Federal Rule of Civil Procedure 78(b).

I.   PROCEDURAL BACKGROUND

Following a jury trial in the New Jersey Superior Court, Law Division, Camden County, Petitioner was convicted of robbery, felony murder, and related offenses. State v. Thompson, 2011 WL 499394 at *2 (N.J. Super. Ct. App. Div. Feb. 15, 2011). On April

28, 2000, Petitioner was sentenced to an aggregate sentence of life in prison without parole. <u>Thompson</u>, 2011 WL 499394 at *2.

In a pretrial conference on October 12, 1999, Petitioner was expressly advised that there was a plea offer for twenty years with a ten-year parole disqualifier, but if convicted at trial, he was facing a life sentence with a parole ineligibility period of thirty years. (ECF No. 37-62 at 4.) Petitioner responded, "It doesn't matter. I'm just worried about my medical. I got pretty much dealt a life sentence already so it doesn't really matter. All right, it doesn't really matter." (<u>Id.</u> at 5.) In response to the court's admonition that Petitioner's medical issue was not the main concern that day, Petitioner expressly stated, "I'd rather just go to trial then." (<u>Id.</u>) Petitioner further stated, "I understand what you're saying. I understand what you're saying so just give me a date, just start the trial." (<u>Id.</u> at 5.)

On direct appeal, Petitioner unsuccessfully raised the following claims: (1) the trial court erred by failing to hold a hearing on whether the defendant's physical condition precluded hi competency to stand trial; (2) Defendant was incompetent to give voluntary statements; (3) the sentence was excessive; (4) the trial court erred by failing to merge the convictions for robbery and possession of a weapon for an unlawful purpose into the felony murder conviction; and (5) the trial court erred in imposing a consecutive sentence for possession of a weapon without a permit.

State v. Thompson, 2011 WL 499394 at *3. On December 4, 2003, the Appellate Division, affirmed Petitioner's convictions but remanded for a sentencing modification. (ECF No. 37-9 at 6-7.) On February 13, 2004, the trial court re-sentenced Petitioner, again sentencing him to life in prison without parole. Thompson, 2011 WL 499394 at *3. The Supreme Court of New Jersey denied certification, State v. Thompson, 179 N.J. 373 (2004), and the Supreme Court of the United States denied certiorari. Thompson v. New Jersey, 543 U.S. 888 (Oct. 4, 2004).

On October 13, 2004, Petitioner filed a petition for post-conviction relief. (ECF No. 37-19.) In the PCR court, Petitioner raised the following issues: (1) ineffective assistance of counsel for failing to call Co-defendant Leary as a witness; (2) ineffective assistance for failing to object to Witnesses Juan Collado and Richard Almanzar appearing at trial prison garb; (3) ineffective assistance for failing to request adequate jury instruction on accomplice liability; and (4) ineffective assistance of counsel for failing to request jury instruction on imperfect self-defense. Thompson, 2011 WL 499394 at *3. The PCR court denied relief. Id. at *3-4. On February 15, 2011, the Appellate Division affirmed the PCR court. Id. at *4-12. The Supreme Court of New Jersey denied certification on June 16, 2011. State v. Thompson, 207 N.J. 35 (2011).

On December 9, 2011, Petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (Pet., ECF No. 1.) On January 15, 2015, this Court granted a stay until Petitioner exhausted Point Three of his petition in the state courts by raising his claim that trial counsel was ineffective for failing to advise Petitioner of his maximum sentencing exposure of life without parole. (Order, ECF No. 30.)

Accordingly, on February 25, 2015, Petitioner filed a second petition for post-conviction relief (PCR) in the Superior Court, Law Division, Camden County. (ECF Nos. 37-35, 37-36 and 37-37.) The PCR court reviewed the transcript of defendant's October 12, 1999 pretrial conference and found that

> Defendant was not properly advised of his exposure had he been convicted after trial. He was advised by the Court his sentence would be at least a life sentence with thirty years without parole, when in all actuality his exposure with him being extended term eligible was a life do life sentence.

(ECF No. 37-81 at 28.) The PCR court concluded that Defendant met the first prong of Strickland, stating "[s]o I am satisfied from what I have read that he was not advised by his attorney of record that he was extended term eligible. So in dealing with first prong of Strickland, I find that the defendant has met his burden…." (Id. at 31.)

Addressing the second prong of the Strickland test, the PCR court determined that Petitioner failed to prove by a preponderance

4

of the evidence that he would have accepted the plea offer that was extended. (ECF No. 37-81 at 31-32.) Rather, the PCR court found that Petitioner was adamant about his desire to go to trial. (<u>Id.</u> at 32-35.)

Despite Petitioner failing to meet the prejudice prong of <u>Strickland</u>, the PCR court decided that there should be a remedy and re-sentenced Petitioner to a thirty-year term of imprisonment, with a thirty-year period of parole ineligibility; the minimum sentence he could receive based upon his convictions. (ECF No. 37-81 at 41).

Petitioner filed a Notice of Appeal. (ECF No. 37-36.) The Appellate Division concluded that the record supported the PCR judge's "well-reasoned decision denying the PCR petition," but found that the PCR court was without authority to resentence Petitioner. (ECF No. 37-43 at 5.) Accordingly, the Appellate Division vacated the Judgment of Conviction entered by the PCR judge, and remanded for an entry of a Judgment of Conviction consistent with the originally imposed sentence. (<u>Id.</u> at 6.) On March 16, 2018, an Amended Judgment of Conviction was entered, consistent with the Appellate Division's ruling. (ECF No. 37-44.) On October 5, 2018, the New Jersey Supreme Court denied Petitioner's petition for certification. (ECF No. 37-39.)

II.  FACTUAL BACKGROUND

The Appellate Division made the following findings of fact in its Opinion on direct appeal:

> In late July, 1996, Juan Collado … was staying at the apartment of Richard Almanzar … in the Pleasant Gardens Apartment Complex in the City of Camden. Mr. Collado was in the business of selling kilos of cocaine to dealers all over Camden. In the course of his drug trade around Camden, Mr. Collado had occasion to meet a Ronnie Leary … and a Michael Lamb…. Mr. Leary was represented to Mr. Collado to be an individual whom he could trust. Mr. Leary advised Mr. Collado that Mr. Lamb could not be trusted.
>
> On the evening of July 30, 1996, Mr. Collado rode as a passenger in a vehicle operated by Mr. Almanzar and met with Mr. Leary at Mario's Pizzeria. Mr. Lamb had been paging Mr. Collado during the day in an attempt to purchase drugs from him. When Messrs. Almanzar and Collado arrived at Mario's, they parked next to Mr. Leary's van. Mr. Collado then exited the vehicle and spoke with Mr. Leary who introduced him to the defendant. Mr. Leary advised Mr. Collado that Mr. Lamb was known to purchase drugs from a dealer on one or two occasions and then rob or attempt to murder the dealer.
>
> Mr. Lamb coincidentally paged Mr. Collado at that time. Mr. Collado returned Mr. Lamb's page. Mr. Lamb asked Mr. Collado if he could purchase one and one-half kilos from him. Mr. Lamb told him that he would have the money for the kilo and asked Mr. Collado if he could give him one-half of a kilo on credit. At the time, a kilo of cocaine sold for twenty-one thousand dollars. Mr. Lamb negotiated a purchase price of nineteen thousand dollars. Mr. Collado told Mr. Lamb that he would get back to him on whether he would agree to give him one-half of a kilo on credit. Mr. Collado

then consulted with Mr. Leary who was afraid
that Mr. Lamb might be trying to set him up.
At Mr. Leary's instruction, Mr. Collado called
Mr. Lamb and told him that he would have the
one and one-half kilos of cocaine for him.
However, Mr. Leary planned to rob Mr. Lamb of
his money. The defendant was present while
these discussions were occurring.

. . .

[On the night in question] Messrs. Almanzar
and Collado then drove to the Pleasant Gardens
Apartments with Mr. Lamb following in his
vehicle. Mr. Collado and Mr. Lamb exited their
vehicles and Mr. Collado directed Mr. Lamb to
the building in the apartment complex where
the transaction would allegedly occur. As the
men were walking through the grass toward the
apartment, Mr. Collado asked Mr. Lamb whether
he was armed. Mr. Lamb responded that he was.
Mr. Collado pointed out that the apartment was
also armed. Mr. Collado was carrying the bag
of money as the men headed toward the
apartment. The plan was to direct Mr. Lamb
towards the bushes where Mr. Leary and the
defendant were hiding. Mr. Leary and the
defendant would hold up Mr. Lamb and Mr.
Collado would then run away with the bag of
money. As Messrs. Collado and Lamb were
walking on the sidewalk, the defendant and
then Mr. Leary came out from the bushes behind
them. Messrs. Collado and Lamb then turned
around to face the defendant and Mr. Leary.
Mr. Lamb then pulled a firearm from his
waistband and shot the defendant. Mr. Collado
then observed the defendant and Mr. Lamb
wrestling. Mr. Leary started shooting at Mr.
Lamb who fell to the ground. As Mr. Collado
was running with the money, he saw the
defendant and Mr. Leary shoot Mr. Lamb while
he was lying on the ground. Doctor Robert
Segal testified at trial and concluded that
Mr. Lamb died as the result of seven gunshot
wounds.

(ECF No. 37-7 at 7-12.) (transcript citations omitted).

III. DISCUSSION

A.  Habeas Standard of Review

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated
> on the merits in State court proceedings
> unless the adjudication of the claim--
>
> > (1) resulted in a decision that was
> > contrary to, or involved an unreasonable
> > application of, clearly established
> > Federal law, as determined by the Supreme
> > Court of the United States; or
> >
> > (2) resulted in a decision that was
> > based on an unreasonable determination
> > of the facts in light of the evidence
> > presented in the State court
> > proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the U.S. Supreme Court's decisions. Williams, 529 U.S. at 412. Further, "'clearly established Federal law' . . . is the governing legal principle or principles set forth

by the Supreme Court at the time the state court renders its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71-72 (2003).

> A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth" in Supreme Court precedent, <u>Williams</u>, 529 U.S. at 405, 120 S.Ct. 1495, or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different" from that reached by the Supreme Court, <u>id</u> at 406, 120 S.Ct. 1495.

<u>Eley</u>, 712 F.3d at 846.

An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. <u>Id.</u> (quoting <u>Renico v. Lett</u>, 130 S. Ct. 1855, 1862 (2010)). "'[W]here the 'precise contours' of [a] right remain 'unclear,' state courts enjoy 'broad discretion' in their adjudication of a prisoner's claims.'" <u>Woods v. Donald</u>, 135 S. Ct. 1372, 1377 (quoting <u>White v. Woodall</u>, 572 U.S. 415, 424 (2014) (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 76 (2003) (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 998 (1991) (KENNEDY J., concurring in part and in judgment).

> A state court decision is based on "an unreasonable determination of the facts" only if the state court's factual findings are "'objectively unreasonable in light of the evidence presented in the state-court proceeding.'" <u>Miller-El [v. Cockrell]</u>, 537 U.S. [322,] 340, 123 S.Ct. 1029 [2003] (citing, *inter alia*, 28 U.S.C. § 2254(d)(2)). Moreover, the factual determinations of state trial and appellate courts are presumed to be

> correct. <u>Duncan v. Morton</u>, 256 F.3d 189, 196
> (3d Cir.2001). The petitioner bears the burden
> of "rebutting the presumption by 'clear and
> convincing evidence.'" <u>Rice v. Collins</u>, 546
> U.S. 333, 339, 126 S.Ct. 969, 163 L.Ed.2d 824
> (2006) (quoting 28 U.S.C. § 2254(e)(1)).

<u>Eley</u>, 712 F.3d at 846. (footnote omitted).

In applying the deference required under § 2254(d), habeas courts must look to the last state court adjudication on the merits of the petitioner's claim. <u>See</u> <u>e.g.</u> <u>Greene v. Fisher</u>, 565 U.S. 34, 40 (2011). If the highest state court decision did not provide reasons for the decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

B. <u>Ineffective Assistance of Trial Counsel</u>

There are two elements to a Sixth Amendment ineffective assistance of counsel claim, deficient performance by counsel and prejudice. <u>Premo v. Moore</u>, 562 U.S. 115, 121 (2011) (citing <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984). "If it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

> If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

Lafler v. Cooper, 566 U.S. 156, 168 (2012).

To obtain relief, a petitioner must show that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea." Id. at 174; Velazquez v. Superintendent Fayette SCI, 927 F.3d 151, 162 (3d Cir. 2019) (prejudice requires a showing that plea would have been accepted by both the petitioner and the court, and the plea was less severe than the judgment and sentence imposed.)

C.   The Petition, Answer and Reply

1.   The Petition

Upon reopening this habeas proceeding after exhausting his claim in the state courts, Petitioner argues that his trial counsel provided ineffective assistance by failing to advise him that if he declined the plea offer, he was subject to life without parole if found guilty. (ECF No. 35 at 2-3.) Petitioner contends the PCR court applied an erroneous standard of review under Strickland v. Washington, 466 U.S. 668 (1984); that he failed to show by a

preponderance of the evidence that he would have accepted the plea offer that was extended. (ECF No. 35 at 3.) Petitioner argues that a preponderance of the evidence is not required. (Id.)

Further, Petitioner maintains that the PCR court's conclusion is not supported by sufficient, credible evidence. (Id.) Petitioner notes the PCR court did not consider the medical evidence detailed in his Section 1983 complaint that was provided to the PCR court. (Id.) Petitioner asserts that his abdominal wall was open from the time he was discharged from the hospital on October 24, 1996 until his sentencing on April 28, 2000, and that he in fact appeared before the trial judge with his "abdominal area split open." (Id. at 4.)

Petitioner argues there is nothing in the record supporting the PCR court's conclusion that Petitioner would not have accepted the plea. (Id. at 5.) Petitioner testified that if he had been advised that he faced a sentence of life without parole, which meant that he would never go home, he would have accepted the plea. (Id.) Petitioner claims he did not definitively reject the plea; he was more concerned about getting medical attention that day. (Id.) Petitioner contends that the proper remedy for the Sixth Amendment violation was for the State to reoffer the original plea of "20 years serve 10 years." (Id. at 18.)

## 2.  The Answer

Respondents note that to succeed on his ineffective assistance claim on habeas review, Petitioner must demonstrate that the state court decision was unreasonable. (Respt's Brief, ECF No. 37 at 14.) Respondents argue that the following evidence in the record supports the PCR court's finding that Petitioner failed to meet the prejudice prong of the Strickland test.

The PCR court found Petitioner's testimony at the evidentiary hearing was self-serving and not credible. (Id. at 15.) PCR counsel acknowledged that Petitioner did not accept the plea offer because he believed that going to trial would expedite his medical attention. (Id.) Petitioner turned down an offer of serving thirty years to life when he could have accepted the offer of twenty years with a ten-year parole eligibility. (Id.) He told the sentencing court "I got pretty much a life sentence already so it doesn't really matter." (Id. at 16.) This belies Petitioner's later testimony that the possibility of parole mattered to him, and he would have accepted the plea in a heartbeat if he knew there was no possibility of parole. (Id.)

## 3.  Petitioner's Reply

In reply, Petitioner contends he would have accepted the plea "in a heartbeat" if he had known he was exposed to a sentence of life without parole, and there is no evidence in the record that the State or the trial court would not have permitted him to accept

the plea. (ECF No. 43 at 4.) Further, the PCR court's remedy for the faulty advice Petitioner received should have been to reoffer the plea of twenty years with a ten-year parole ineligibility. (Id. at 6.)

Petitioner challenges the PCR court's finding that he was not credible. He states that the PCR court ignored objective evidence of photographs where Petitioner's intestines was "hanging out in the open" during his trial. (Id. at 7.) Petitioner cites the following colloquy to show that he was only concerned about his medical needs and the trial judge tried to coerce him into accepting the plea without competent advice from counsel.

> THE COURT: The offer that that's being made is no longer in effect today. Do you understand what you have been offered?
>
> MR. THOMPSON: Not really. I'm just worried about my medical right now.
>
> THE COURT: Well that's the problem because --
>
> MR . THOMPSON: These issues was raised before Judge Freeman. He say we have to bring them to you. They got me over in the jail in agg seg. I don't need to be in agg seg, I need to be on a medical wing where I need mobility, where I can move. And he said he gonna let you address it.
>
> Judge Freeman said let you handle it and the jail where I don't know what they doing there. They doing more damage than anything by keeping me in the agg seg. I asked them on numerous occasions can I go back to the medical block so I can move so I can be able

to participate in this trial and help him so I won't be in so much pain.

THE COURT: Well, Mr. Thompson, first things first and I do have to address today just what you're saying whether there's going to be a trial or not going to be a trial. I have to understand that first before we can go from there 'cause you're saying you want to help everyone participate in the trial. You don't want to be in pain. And I certainly can appreciate what you're saying, but I have to make sure, first of all, that you're telling me there is going to be a trial as opposed to the - -

MR. THOMPSON: I do want to go to trial.

THE COURT: All right, and you understand at this point that you are facing a life sentence with a maximum or a minimum parole ineligibility period of 30 years.

Mr. THOMPSON: Okay.

THE COURT: And you understand that the state, at this point, has offered you a series of concurrent sentences, which in the aggregate, would be 20 years with 10 years parole ineligibility. Do you understand that?

MR. THOMPSON: That wasn't offered. It was 22 with 11. That's what I got on my paperwork.

MR. CONLEY: Judge, the offer today is 20 years, 10 years without parole which is the same sentence that the other defendants got. That's the lowest that the offer will ever be.

THE COURT: And the reason why this is so important, Mr. Thompson, is because I have [to] say truthfully in the cases I've handled in my experience in the criminal division, I have, as I already have said to Mr. Conley and to Mr. Fletcher, I have not seen an offer made of this nature so I want to be sure -- now you've indicated you weren't aware of this --

but I want to be sure that you understand what is being offered so that I know you understand what's been offered and I want to be sure you've given it enough thought before I have you tell me that you don't wish to go further.

MR. THOMPSON: It doesn't matter. I'm just worried about my medical. I got pretty much been dealt a life sentence already so it so it doesn't really matter. The only thing right now I'm just hoping the jail I could try to get some medical attention before I can go to prison because I know if I go to prison I'm not gonna get the proper medical attention that I will get at Cooper Hospital. So that's my main concern.

THE COURT: Well it can't be your main concern today. I'm sorry.

MR. THOMPSON: I'd rather just go to trial then.

(ECF No. 43 at 8-9) (citing Oct . 12, 1999 Trans. 5-16 to 8-14.)

Petitioner concludes that the record objectively demonstrates he would have taken the plea in a heartbeat if he knew of his exposure to life without parole. (ECF No. 43 at 11.)

D.  Analysis

Petitioner contends the PCR court applied an erroneous standard of review under Strickland by requiring him to show, by a preponderance of the evidence, that he would have accepted the plea offer that was extended. (ECF No. 35 at 3.) Indeed, the Strickland prejudice prong requires a showing that "there is a reasonable probability [the defendant] and the trial court would have accepted the guilty plea."

16

"[W]hen the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion ... a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." Wilson, 138 S. Ct. at 1192. The New Jersey Superior Court Appellate Division held that the record supported the PCR court's well-reasoned decision that "defendant failed to meet his burden of establishing that there was 'a reasonable probability that but for [trial counsel's misadvice] regarding [defendant's] sentence exposure he would have accepted the plea offer.'" (ECF No. 37-43 at 5) (alterations in original) (quoting PCR Court Transcript, ECF No. 37-81 at 36.) Although the PCR court stated that Petitioner failed to make this showing "by a preponderance of the evidence," the Appellate Division identified the appropriate test for the Strickland prejudice prong.

In affirming the PCR court's finding that Petitioner did not meet the prejudice prong of the Strickland test, the Appellate Division stated:

> The [PCR] judge, however, carefully considered the pre-trial conference transcript; medical records; a photograph proffered by defendant; letters from counsel; and defendant's testimony at the evidentiary hearing, and determined defendant's medical condition at the time of the pre-trial conference did not cause defendant to reject the State's plea offer. The judge expounded:

> [I]n watching [defendant's] testimony,
> which I don't find totally credible at
> all, I note that when he was presented
> with the questions as to whether or not
> he would have accepted … the plea, he
> hesitated and he dropped his head and he
> [said] he would have accepted the plea in
> a heartbeat. And I'm not convinced of
> that.
>
> The record supports her well-reasoned decision
> denying the PCR petition.

(ECF No. 37-43 at 5.)

In contrast, Petitioner's testimony is the only evidence in support of his claim that if he had known that he was subject to a life sentence without parole instead of a life sentence with a thirty-year period of parole ineligibility, he would have accepted the plea offered, twenty years in prison with ten years parole ineligibility. The PCR Court observed Petitioner's testimony and found it not credible based on his demeanor and also looked at the statements Petitioner made when he rejected the plea offer.

First, contrary to Petitioner's assertion, the PCR court addressed Petitioner's claim that he was so focused on his medical condition he was not interested in the plea offer before him. (ECF No. 37-81 at 32.) Petitioner submitted a photograph that he claimed showed his open abdominal wall with his intestines hanging out during his trial. (Id.) The PCR court reasonably rejected this bizarre claim, noting "I can't imagine any judge having anyone in

their courtroom with their abdominal area split open with their insides hanging out…." (ECF No. 37-81 at 32.)

It is true that Petitioner wanted to address the medical concerns he had raised in a civil rights complaint at the pretrial hearing. He said he wanted to be in the jail's medical wing rather than in administrative segregation. (ECF No. 37-62 at 3-4, 6-8.) However, when prodded by the trial judge to address the plea offer that would expire that day, Petitioner said "I do want to go to trial." (Id. at 4.)

Second, Petitioner said he wanted medical attention not only because he was in pain but because he "needed mobility" to participate in his defense. (Id.) When confronted with a parole ineligibility period of thirty years, Petitioner stated "I got pretty much dealt a life sentence already so it doesn't really matter." (Id. at 5.) This supports the PCR court's finding that Petitioner was adamant about wanting to go to trial and suggests that Petitioner felt he had nothing to lose because he was already facing life in prison.

Even if the state court decision was not entitled to AEDPA deference and this Court applied a de novo standard of review, the record supports finding there was not a reasonable probability that but for counsel's failure to advise Petitioner of his sentence exposure to life without parole he would have accepted the plea offer. See Vickers v. Superintendent Graterford SCI, 858 F.3d 841,

849-50 (3d Cir. 2017) (where state court decision was contrary to Strickland and Lafler because the wrong standard was applied, AEDPA deference is no longer necessary; the court must conduct a de novo review and must still presume that state court factual findings are correct unless rebutted by clear and convincing evidence.)

IV.  CERTIFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

For the reasons discussed above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

V.  CONCLUSION

The Court denies Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254 and denies a certification of appealability.

An appropriate Order follows.

Dated: <u>November 19, 2019</u>

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**United States District Judge**
